UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARCAEL MARIO DIXON,

        Plaintiff,                         Case No. 1:13-cv-1078

v.                                                 Honorable Robert Holmes Bell

B. MORRISON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Marcael Mario Dixon is a state prisoner incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF). He sues the following current and former employees of LCF: Lieutenant/Acting Inspector B. Morrison, former Deputy

Warden (unknown) Lockwood, Hearings Investigator (unknown) Stepp, Hearings Officer M. Szappan, Staff Sergeant (unknown) Desmond (also spelled "Dezmand"), Hearings Administrator Richard D. Russell, and Corrections Officer (unknown) Burmham (also spelled "Burnham").

In his *pro se* complaint, Plaintiff alleges that, on April 4, 2013, corrections officers at LCF searched inmate Parpart's possessions and found a "computer chip" (i.e., flash drive), a cell phone card, and a cell phone battery. (Compl., docket #1, Page ID#4.) The following day, when Plaintiff arrived for work, he was escorted to Defendant Morrison's office, where Defendant Lockwood was also present. Defendants Morrison and Lockwood asked Plaintiff about his association with Parpart. Plaintiff explained that Parpart was helping him with some legal work. Defendant Morrison then showed Plaintiff two flash drives, one red and one blue, and asked Plaintiff about them. Plaintiff stated that he was authorized to use the blue one in his work area, but he did not know about the red one. Morrison indicated that some of Plaintiff's legal work was on the red drive, but Plaintiff stated that he had nothing to do with that. Morrison then asked about the cell phone components, but Plaintiff denied having any knowledge about them. Morrison stated that perhaps Plaintiff's work supervisor or another corrections officer gave the parts to Parpart, and indicated that Plaintiff knew more than he was willing to divulge. Morrison then escorted Plaintiff to a holding cell while another officer searched Plaintiff's cell. The search did not turn up anything, but Morrison and Lockwood agreed to terminate Plaintiff from his work assignment because they believed that he gave the flash drive to Parpart. They also placed Plaintiff in his cell, on "top lock" status, pending an investigation.

On April 11, 2013, Defendant Morrison prepared a class I misconduct report charging Plaintiff with possession of dangerous contraband and theft/possession of stolen property. According to the report, Plaintiff told Morrison that he gave the red flash drive to Parpart.

Sgt. Desmond reviewed the misconduct report with Plaintiff and showed Plaintiff a photograph of the two drives. The photograph was taken by Officer Burmham and it contains a caption stating that the drives were "found on prisoner Dixon." (Ex. 3, docket #1-1, Page ID#25.)

Defendant Stepp was assigned to be the hearings investigator for the misconduct charge. Plaintiff wrote a statement and prepared a list of questions for inmate Parpart and for Plaintiff's work supervisor. Plaintiff then gave the statement and the questions to Stepp. A hearing on the misconduct charges was held on April 18, 2013. At the hearing, Defendant Stepp submitted a statement by Parpart, but Parpart's statement did not address the questions posed by Plaintiff.

Defendant Szappan conducted the misconduct hearing. Plaintiff asserts that Szappan was biased because he was a staff member at LCF before he became a hearings officer. Szappan issued a report finding Plaintiff guilty of the charges and punishing him with a 15-day loss-of-privileges sanction. Though the misconduct hearing report expressly states that Plaintiff was found guilty of "Theft Possession of Stolen Property" and "Possession of Dangerous Contraband," it erroneously identified the "reporting code" for the contraband charge as "034." (*See* Class I Misconduct Hr'g Rep., docket #1-1, Page ID#33.) The number "034" is the code for a violation involving "substance abuse (alcohol)." MDOC Policy Directive 03.03.105, Attach. A (Apr. 9, 2012). The code for possession of dangerous contraband is 030. *See id.*

After the hearing, Plaintiff requested an appeal packet from Defendant Stepp. When Plaintiff did not receive one, he filed a request for a rehearing with Warden Hoffner. (*See* Ex. 12, docket #1-1, Page ID#34.) A few days later, Plaintiff saw Defendant Lockwood, who was "adamant about Plaintiff NOT APPEALING the Misconduct Report," telling Plaintiff to "just let it go." (Compl., docket #1, Page ID#8.)

Plaintiff then spoke with inmate Parpart, who denied making a statement to Defendant Stepp, and stated that he did not receive a list of questions from Plaintiff. Parpart also claimed that Morrison and Lockwood made certain promises to him if he would assert that the cell phone components came from Plaintiff's work supervisor.

Plaintiff finally received an appeal packet on May 13, 2013, from the warden's assistant. The packet included a response to Plaintiff's request for a rehearing, which was denied by Defendant Russell. According to Russell, all relevant issues were addressed at the hearing, no bias was apparent, and there was sufficient evidence to support the charges of "Substance Abuse (Alcohol) and Possession of Stolen Property, Theft." (*See* Request for Rehearing Response, docket #1-1, Page ID#40.)

On August 5, 2013, Plaintiff wrote a letter to Officer Mittelstadt (who is not a defendant in this action), requesting a new position in the food tech program, but Mittelstadt refused. Instead, Mittelstadt offered Plaintiff several other jobs. On August 29, 2013, Plaintiff wrote a letter to the LCF warden requesting employment in the food tech program. Plaintiff has not received a response.

Based on the foregoing, Plaintiff claims that Defendants violated his right to due process, retaliated against him for engaging in protected conduct, and/or engaged in a conspiracy to violate his rights. As relief, Plaintiff seeks compensatory and punitive damages, costs for bringing suit, and various forms of injunctive relief, including: (1) permanent transfer back to his "Honor Room on bunk C-2-32"; (2) removal of the misconduct ticket from his prison file; (3) an order prohibiting the MDOC from transferring him to another facility, bunk or unit without his written consent; (4) placement back on work assignment as a food tech clerk, with pay of $3.34 per day

every day of the week, regardless of whether he works; and (5) immediate transfer of inmate Parpart to another facility. (Compl., docket #1, Page ID#21.)

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Retaliation**

Plaintiff claims that Defendants retaliated against him in the following ways: (1) Defendants Lockwood and Morrison terminated Plaintiff from his job and issued a misconduct report against him because Plaintiff would not implicate other individuals as the source of the cell phone parts found in Parpart's belongings; (2) Defendant Lockwood recommended that Plaintiff not appeal the misconduct conviction; (3) Defendant Desmond reviewed the misconduct report with Plaintiff without verifying the photograph offered in support of the report, or making sure that the report was completed properly; (4) Defendant Burmham took a photograph of the two flash drives with a caption stating that they were found in Plaintiff's possession; (5) Defendant Stepp did not fully investigate the misconduct report, did not ensure that inmate Parpart answered all of Plaintiff's questions, and did not provide a timely appeal packet after the misconduct hearing; (6) Defendant Szappan was biased and, thus, allegedly deprived Plaintiff of a fair misconduct hearing; and (7) Defendant Russell allegedly deprived Plaintiff of a fair appeal process by failing to correct the errors in the misconduct hearing report.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged

in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

1. Misconduct report

Plaintiff's claim regarding the allegedly retaliatory misconduct charge in the misconduct report issued fails for several reasons. First, assuming that Plaintiff's alleged refusal to implicate other individuals qualifies as protected conduct, the allegations do not support Plaintiff's assertion that the misconduct report was motivated by that refusal. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). But "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). Plaintiff merely alleges the ultimate fact of retaliation in this action.

He has not presented facts to support his conclusion that Defendants charged him with a misconduct because of a refusal to make statements implicating others.

Furthermore, the guilty finding in Plaintiff's misconduct proceeding effectively bars his retaliation claim. In *Hartman v Moore*, 547 U.S. 250 (2006), the Supreme Court concluded that a plaintiff bringing a First-Amendment retaliatory prosecution claim must plead and prove the absence of probable cause. In *Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006), the Sixth Circuit held that, applying *Hartman,* a claim of First-Amendment retaliatory arrest requires a plaintiff to plead and prove the absence of probable cause. The Supreme Court declined to decide whether a retaliatory arrest was actionable if supported by probable cause. *See Reichle v. Howards*, 132 S. Ct. 2088 (2012). Instead, the Court held that the officers were entitled to qualified immunity because it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation. *Id.* at 2097.

A prison misconduct charge does not precisely parallel either an arrest or a prosecution, because there is no actual prosecutor or arresting officer, only a charging officer and a hearing officer. Nevertheless, a misconduct charge must be considered comparable to one of those two things. Accordingly, under the reasoning of *Hartman* and *Barnes* collectively, a prisoner's claim regarding a retaliatory misconduct charge must plead and prove the absence of probable cause. Where a hearing officer has made a finding of guilt in a class I misconduct proceeding, the claim will be barred by deference to the state's finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 914-17 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect in a § 1983 action). At a minimum, such a finding establishes probable cause. Consequently, Plaintiff retaliation claim is effectively barred by the result of his major misconduct proceedings.

2. Job termination

Plaintiff also claims that Defendants Lockwood and Morrison terminated Plaintiff from his job in retaliation for Plaintiff's refusal to implicate others as the source of the contraband cell phone components. Like Plaintiff's claim regarding the misconduct report, Plaintiff's allegations are too conclusory to state a plausible retaliation claim. None of the facts alleged indicate that Defendants' decision was motivated by Plaintiff's response to their questioning. Indeed, given that Plaintiff was the subject of an investigation concerning items improperly obtained from his work area, it is far more likely that Defendants terminated Plaintiff from his job because of their belief that he was responsible for the theft of those items, not because of any protected conduct.

3. Statements by Lockwood re appeal

Plaintiff also contends that Lockwood retaliated by telling Plaintiff not to appeal the misconduct conviction. Here, Plaintiff's claim fails because it does not allege an adverse action by Lockwood. The adverseness of a defendant's conduct is an objective question, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). A specific threat of harm could satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. In Plaintiff's case, Lockwood did not take any action against Plaintiff or threaten any adverse consequences if

Plaintiff pursued his appeal. Consequently, Lockwood's statements do not give rise to a retaliation claim.

### 4. Other retaliation claims

Plaintiff also does not state a retaliation claim against Defendant Desmond for failing to properly review the misconduct report or the evidence in support thereof, against Defendant Burmham for creating a photograph representing that Plaintiff was found in possession of the allegedly stolen flash drives, against Defendant Szappan for conducting the misconduct hearing, or against Defendant Russell for affirming Plaintiff's misconduct conviction on appeal. Defendants' actions are not plausibly related to any protected conduct; thus, Plaintiff's retaliation claims against them are wholly conclusory.

### B. Due Process

#### 1. Misconduct proceedings

Plaintiff claims that Defendants deprived him of due process in connection with his misconduct proceedings. Plaintiff's ability to challenge his misconduct proceedings depends on whether the resulting conviction and/or punishment implicated any liberty interest. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to

process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners, like Plaintiff, who were convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 17591 (E.D.Mich. Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Connor*, 515 U.S. 472, 484 (1995). However, Plaintiff has not identified an atypical, significant deprivation arising from his misconduct conviction. The 15-day loss of privileges sanction that he received is not atypical and significant. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (14 day loss of privileges is not atypical and significant). Because Plaintiff's prison misconduct conviction did not result in an extension of the duration of his sentence or some other atypical hardship, his due-process claim fails.

### 2. Prison job / cell placement

To the extent Plaintiff asserts a due process claim based on the loss of his job and/or his preferred cell,[2] he does not state a claim. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Morever, "as

---

[2] As part of his request for relief, Plaintiff requests transfer to a specific cell.

the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). In addition, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility, let alone a particular cell within a prison facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (no right to incarceration in a particular state); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976) (no right to incarceration in a particular facility). The Sixth Circuit has followed the Supreme Court's rulings in a variety of cases. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter*, 69 F. App'x at 680 (same). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment and the loss of placement in his preferred cell.

### C. Conspiracy

Plaintiff also contends that Defendants conspired with one another to violate his rights. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators

to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete actions by individual officers, without establishing an agreement between them to violate his constitutional rights. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has stated, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.

Moreover, the conspiracy claim necessarily fails because it is based upon Plaintiff's underlying claims for retaliation and violation of due process. For the reasons stated *supra*, Plaintiff has not stated a viable retaliation or due process claim. Consequently, he also does not state a viable conspiracy claim under § 1983.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered. In addition, because Plaintiff's complaint will be dismissed, his motion for a temporary protection order (docket #8) will be denied as moot.


Dated: <u>December 12, 2013</u>   /s/ Robert Holmes Bell
                                                                              ROBERT HOLMES BELL
                                                                              UNITED STATES DISTRICT JUDGE